UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/17/2020
```

------------------------------------------------------------------X
                                                                  :
KYLE STRAUSS                                                      :
                                                                  :
                              Plaintiff,                           :
                                                                  :                19-cv-10158 (LJL)
               -v-                                                :
                                                                  :                     ORDER
                                                                  :
LITTLE FISH CORPORATION d/b/a CARMINE'S                           :
ITALIAN RESTAURANT and ALICART, INC. d/b/a                        :
ALICART RESTAURANT GROUP,                                         :
                                                                  :
                                                                  :
                              Defendants.                          :
                                                                  :
--------------------------------------------------------------- :
                                                                  X

LEWIS J. LIMAN, United States District Judge:

        Plaintiff Kyle Strauss and Defendants jointly seek approval of their settlement of this

action (the "Settlement Agreement").  Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796

F.3d 199 (2d Cir. 2015), the Court must determine if the Agreement is fair and reasonable.

## BACKGROUND

### A.    Case Background

        Plaintiff Kyle Strauss ("Strauss" or "Plaintiff") filed this lawsuit on November 4, 2019,

alleging that Defendants Little Fish Corp. (d/b/a Carmine's) and Alicart, Inc. (d/b/a Alicart

Restaurant Group) (together, "Defendants") violated retaliation provisions of the federal Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and New York Labor Law ("NYLL").

Dkt. No. 1.  Plaintiff was a server at Carmine's Italian Restaurant, a fabled eatery located in

Times Square in Manhattan, for almost eight years starting in approximately August 2011.  Dkt.

No. 1 ¶¶ 20-22.  As such, Plaintiff was member of a 2018 class action lawsuit filed in New York

State Supreme Court, Kings County (the "State Court Lawsuit" or "Underlying Action")

comprising all non-managerial employees who had worked at either Carmine's or a related restaurant, Virgil's Real Barbeque, sometime between May 2012 and October 2018. *Flores v. Times Square Barbeque, Inc.*, Index No. 520892 (N.Y. Sup. Ct., Kings Cty., Oct. 17, 2018). In the State Court Lawsuit, class members alleged the restaurants had violated the FLSA and NYLL, but the parties ultimately settled ("Class Action Settlement"). Defendants compensated class members for unpaid wages and overtime in exchange for a release from wage and hour claims, with the exception of retaliation claims. Dkt. No. 1 ¶¶ 10-15.

In the instant lawsuit, Plaintiff alleges his employers retaliated against him for participating in the Class Action Settlement and for taking a short break to which he was entitled under NYLL. Dkt. No. 1 ¶¶ 47-51. On May 30, 2019, after the Class Action Settlement was filed but had yet been approved by the court, Dkt. No. 1 ¶¶ 11-12, Plaintiff alleges he was confronted by a shift manager and sent home for taking a short cigarette break which he had regularly taken in the past without any recriminations. Dkt. No. 1 ¶¶ 35-37. On June 4, 2019, days after the parties had sought final approval of the Class Action Settlement, with Defendants aware Plaintiff had not opted out of that settlement, Plaintiff was discharged from employment purportedly for "stealing company time." Dkt. No. 1 ¶¶ 40-42. As relief, Plaintiff seeks lost wages, liquidated damages in an amount equal to his lost wages pursuant to the FLSA, statutory penalties up to $20,000 pursuant to NYLL, and pre and post-judgment interest.

## B.   The Settlement Agreement

The Court ordered the case to mediation on January 16, 2020. The parties participated in mediation on March 2, 2020, and reached an agreement in principle. Thereafter, they documented their first settlement agreement for approval. Dkt. No. 13 (the "Original Agreement"). The Original Agreement contained confidentiality and release provisions atypical

of FLSA settlement agreements approved by this Court.  For one, the confidentiality clause

forbade Plaintiff from speaking about "the existence, contents, and execution of th[e]

Agreement" and from "disclos[ing] the existence of any of the terms of th[e] Agreement."

Original Agreement at 9-10.  The Original Agreement also contained a broad general non-mutual

release pursuant to which Strauss released Defendants but Defendants did not release Strauss

from "any matter, cause or claim arising out of Strauss's employment, membership, relationship,

and/or separation from the Releasees, existing on or prior to the time of the execution of this

Agreement."  Original Agreement at 2-3.  Additionally, there was no documentation to support

the request for an award of attorney's fees.

On May 20, 2020, the Court ordered counsel to file a letter by May 27, 2020 in order to

substantiate the request for attorney's fees and costs by including "contemporaneous time sheets,

billing records, information about hourly rates" and "any other documentation necessary to

support the requested award."  Dkt. No. 14.  The Court also scheduled a conference to consider

the Original Agreement.  That conference was held on May 29, 2020.  During that conference,

the Court raised questions about both the nonmutual release and the confidentiality provision.  It

became clear during the conference that there remained significant differences between the

parties and that questions remained concerning whether the Plaintiff himself understood the

terms to which he agreed.  Accordingly, the Court directed the parties to attempt to resolve the

outstanding issues between them and, if successful, to submit a revised settlement agreement or

else to advise the Court that litigation would proceed.

The parties have now submitted a revised settlement agreement, Dkt. No. 19-1 (the

"Settlement Agreement"), containing revised confidentiality provisions, terms of release, and

timing of payments provisions.  The Settlement Agreement requires Defendants to pay a total of

$9,000 in three parts: (1) $2,875.00 representing lost wages, less applicable payroll taxes, deductions and other withholdings; (2) $2,875.00 representing compensatory damages; and (3) $3,000 for attorney's fees and $250 for costs.  Plaintiff agrees, as part of the settlement, that the settlement amount is the most he is entitled to receive from Defendants under the wage and hour statutes, inclusive of liquidated damages and fees.  In exchange, Plaintiff agrees to a dismissal of the case with prejudice and to release any claims existing on or prior to the time of the execution of the Settlement Agreement that arose from his "employment, membership, relationship with and/or separation from" Defendants, except those that "cannot be released or waived by law," including Plaintiff's "ability to file a claim with or participate in investigations conducted by, inter alia, the EEOC and NLRB." *Id.* at 2-4, 6.

The Settlement Agreement before the Court is different in several respects from the Original Agreement.  Unlike the release provision in the Original Agreement, the release in the Settlement Agreement is mutual and states that "Defendants release and discharge Plaintiff from any and all claims and liabilities of any kind, known and unknown, that they have or have ever had against the Plaintiff, including events that have occurred prior to the execution of this agreement." *Id.* at 4.  In addition, unlike the confidentiality provision in the Original Agreement, the confidentiality provision in the Settlement Agreement does not prohibit Plaintiff from discussing the existence of the agreement, and in fact explicates that "the Parties agree that this provision does not limit STRAUSS from discussing the Underlying Action." *Id.* at 9-10.  On the other hand, the Settlement Agreement does contain a non-disparagement provision, that was also included in the Original Agreement, under which Plaintiff "agrees that he shall not disparage or make any negative references or statements, or induce or encourage others, directly or indirectly, to disparage Defendants . . . ." *Id.* at 10.

4

The settlement amount, release, confidentiality, and non-disparagement clauses, and the request for attorney's fees are addressed in the discussion below.

## DISCUSSION

In *Cheeks*, the Second Circuit held that a court or the Department of Labor must approve a settlement dismissing FLSA claims with prejudice "in light of the unique policy considerations underlying the FLSA" and "the statute's remedial and humanitarian goals." *Cheeks*, 796 F.3d at 206 (quoting *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008)). Thereafter, in *Fisher v. SD Protection Inc.*, 948 F.3d 593 (2d Cir. 2020), the Second Circuit made clear that the Court should evaluate separately first, the terms and conditions of the settlement and second, any award of attorney's fees. The Court does so here.

### A.    Fairness of the Terms and Conditions of the Settlement
1.    The Settlement Amount

The Court evaluates the fairness of the settlement agreement by applying the factors set forth in *Fisher*, 948 F.3d at 600; *Cheeks*, 796 F.3d at 206-07; and *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012):

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Fisher*, 948 F.3d at 600 (quoting *Wolinksy*, 900 F. Supp. 2d at 335-36); *see also Cortes v. Bronx Bar & Grill LLC*, 2019 WL 6318430 at *1 (S.D.N.Y. Nov. 25, 2019); *Heiloo v. Fruitco Corp.*, 2019 WL 5485205 at *1 (S.D.N.Y. Oct. 25, 2019).

First, the settlement is fair when measured against the total range of recovery. As noted, the parties have agreed to a $9,000 settlement, of which roughly two-thirds will be paid to

Plaintiff and one-third to Plaintiff's counsel in satisfaction of its fees and costs.  Employers who

violate any FLSA provisions are subject to penalties of "not more than $10,000," 29 U.S.C.

§ 216(a), and not more than $20,000 for violations of NYLL.  N.Y. Labor L. § 215(1)(b).

Plaintiff's claim is limited to retaliation alone, and he was unemployed for only one month

following his termination, suffering lost wages for an amount that counsel represents was well

under $10,000.  Dkt. No. 13 at 3.

 As to the second and third factors, the Court is satisfied that the settlement saves the

parties from additional burden and expense, primarily in the form of litigation.  The parties' joint

letter characterizing the agreement states, "The litigation risks faced by the parties are substantial

and the settlement represents a reasonable compromise of Plaintiff's claims, which enables the

parties to avoid the burdens and expenses relating to further litigation."  Dkt. No. 13 at 4.  The

"Purpose" section of the Settlement Agreement further affirms that "[t]he purpose of this

Agreement is to avoid further litigation . . . ."  Settlement Agreement at 5.  The litigation risks

for Plaintiff here were substantial.  In order to make out his FLSA claim, Plaintiff would have

had to prove that Defendants discharged or discriminated against him "because [he had] filed a[]

complaint or instituted or caused to be instituted a[] proceeding under FLSA."  29 U.S.C.

§ 215(a)(3).  FLSA retaliation claims are also subject to a three-step burden-shifting framework

pursuant to *McDonnell Douglas*, under which Plaintiff would have to show "participation in a

protected activity known to the defendant."  *Mullins v. New York*, 626 F.3d 47, 53 (2d Cir. 2010)

(citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)); *Brock v. Casey Truck Sales,*

*Inc.,* 839 F.2d 872, 876 (2d Cir. 1988)).  Under NYLL as well, Plaintiff would have to establish

that his termination was as a result of his participation in the State Court Lawsuit and not for

some other reason.  *See Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336,

354 (S.D.N.Y. 2014) (to bring a retaliation claim under the NYLL, "a plaintiff must plead that while employed by the defendant, [the plaintiff] made a complaint about the employer's violation of the law and, *as a result*, was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action") (emphasis added) (internal quotation omitted). As counsel for Defendants described without contradiction at the May 29 hearing, Plaintiff's claim faces substantial obstacles that could well prove fatal either at summary judgment or trial, including that: the managers involved in Plaintiff's termination did not know he was a member of the State Court Lawsuit; there is no evidence that Defendants retaliated against any of the other 882 individuals who participated in the Class Action Settlement; and the evidence supported that Plaintiff was terminated for insubordination and repeatedly violating company policies.

Fourth, the Settlement Agreement is the product of arm's length bargaining between experienced counsel, and fifth, there is no evidence to suggest fraud or collusion. Counsel for each party has participated in numerous FLSA and NYLL matters before this Court. *See, e.g., Rios v. Louya Corp.*, 2015 WL 5918194 (S.D.N.Y. Oct. 8, 2015); *Louison v. Bronx-Lebanon Hosp. Ctr.*, 2011 WL 682968 (S.D.N.Y. Feb. 18, 2011); *Allison v. Clos-ette Too, L.L.C.*, 2015 WL 9591500 (S.D.N.Y. Apr. 20, 2015). The parties reached an agreement in principle through mediation led by a judicial official as part of New York's court-annexed mediation program. Further, because Plaintiff is no longer employed by Defendants, the risk of coercion—a concern in other cases—is minimal to non-existent. *See, e.g., Wolinsky*, 900 F. Supp. 2d at 335; *Cisneros v. Schnipper Rest, LLC*, 2014 WL 67235, at *2-3 (S.D.N.Y. Jan. 8, 2014).

2.     The Non-Economic Terms

The non-economic terms of the Settlement Agreement present a different, and far more difficult, question.  Although the Original Settlement Agreement contained release and confidentiality clauses different from those which have become standard in this District, the parties have since revised the terms of the Settlement Agreement to make the release mutual and have loosened the confidentiality provision by permitting Plaintiff to discuss the existence and execution of the Settlement Agreement, as well as the Underlying Action.

a.     *The Release*

The Settlement Agreement contains a mutual general release.  Under it, each party releases the other from "all claims and liabilities of any kind, known and unknown, that they have or have ever had against [] [each other], regarding events that have occurred prior to the execution of this agreement."  Settlement Agreement at 2.  Understandably, the release does not contain a carve-out for retaliation claims because that is the claim at issue.

The Court will approve the general mutual release.  The Court recognizes that courts in this District have generally rejected broad general releases in settlement agreements that resolve FLSA and NYLL wage-and-hour claims.  *See, e.g.*, *Arango v. Scotts Co.*, 2019 WL 117466, at *4 (S.D.N.Y. Jan. 7, 2019) ("The case law is clear that 'any release provision must be limited to the claims at issue in this action'") (quoting *Lazaro-Garcia v. Sengupta Food Servs.*, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015)); *Heiloo*, 2019 WL 5485205, at *2 ("The Court's 'obligation to police unequal bargaining power between employees and employers' points against the approval of this particular [general] release.'") (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)); *see also Guerra-Alonso v. West 54 Deli Corp.*, 2015 WL 3777403 (S.D.N.Y. May 22, 2015); *Villanueva v. 179 Third Ave. Rest Inc.*, 2018 WL

3392870 (S.D.N.Y. July 12, 2018); *Mobley v. Five Gems Mgmt. Corp.*, 2018 WL 1684343

(S.D.N.Y. Apr. 6, 2018); *Metwali v. APV Valet Parking Corp.*, 2017 WL 4326054 (S.D.N.Y.

Sept. 13, 2017).

 Those courts reason that because Congress intended employers to pay a fair wage that

accords a "minimum standard of living," 29 U.S.C. § 202(a), it would counterserve those

legislative objects for an employer to extract a broad general release from its employee in

exchange for an agreement to simply pay her what she was due.  In essence, the general portion

of the release is "uncompensated."  The courts have also observed that when the employer and

employee continue in an employment relationship, that continued relationship accords the

employer a particularly great degree of power over the employee sufficient to cast the fairness of

the release into question.  As Judge Kaplan put it in one of the leading cases on the issue:

> The parties have every right to enter into a settlement that waives claims relating to
> the existing suit in exchange for a settlement payment.  But the Court will not
> countenance employers using FLSA settlements to erase all liability whatsoever in
> exchange for partial payment of wages allegedly required by statute.  A release as
> broad as that in the proposed Agreement confers an uncompensated, unevaluated,
> and unfair benefit on the employer and is inequitable and unfair.

*Nights of Cabiria*, 96 F. Supp. 3d at 181 (quotations omitted) (citing *Moreno v. Regions*

*Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010) (reasoning that a pervasive release in

an FLSA settlement that discharges parties from all future claims is inequitable because

"the employee bears the risk of loss and the employer always wins")).

 At the same time, however, some courts in this District have approved a general release

when (1) it is mutual; and (2) the employer and employee have ceased their employment

relationship.  Such a broad mutual general release operates as a walk away provision: it permits

each side to terminate their relationship entirely free from fear that the other will re-engage in the

form of a lawsuit.  As Judge Cott put it when reviewing a case similar to the one at issue:

> A general release . . . with former employees who have no ongoing relationship
> with the employer, makes sense in order to bring complete closure . . . Accordingly,
> the Court is willing to approve the release terms of the settlement in this case, with
> the modification that the release be *mutual* in all respects.  A mutual release will
> ensure that both the employees and the employer are walking away from their
> relationship up to that point in time without the potential for any further disputes.
> It is just as necessary for employees to obtain a release from the employer in these
> circumstances, otherwise they could still face the threat of litigation. This result is
> consistent with the goals of a fair and just settlement.

*Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015).  Another court

similarly addressed a mutual general release and concluded:

> There is nothing inherently unfair about a release of claims in an FLSA settlement.
> Applying the *Wolinksy* factors to this case, the Court concludes that the mutual
> release of claims in the Settlement are fair and reasonable, and do not run afoul of
> the non-FLSA claims, was the fair result of a balanced negotiation, in which
> Plaintiffs were represented by able counsel. Weighing the litigation risk involved
> in taking this case to trial against the full payment of unpaid overtime and partial
> liquidated damages provided by the Settlement, Plaintiffs could reasonably
> conclude that the provisions releasing claims were an acceptable compromise.

*See also Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *2 (S.D.N.Y.

Feb. 3, 2016) (noting also that the mutuality of the release "assuag[ed] concerns that the waiver

benefits only Defendants"); *Daniels v. Haddad*, 2018 WL 6713804, at *1 (S.D.N.Y. Dec. 17,

2018) (upholding general release provisions because "the parties have provided 'a concrete and

persuasive explanation of the practical benefit [Plaintiff] stands to realize in exchange for

broadly releasing all claims against [Defendants]'") (quoting *Gurung v. White Way Threading*

*LLC*, 226 F. Supp. 3d 226, 229 (S.D.N.Y. 2016)); *Chowdhury v. Brioni America, Inc.*, 2017 WL

5953171, at *3 (S.D.N.Y. Nov. 29, 2017) (approving general release in part "because the

provision was negotiated by competent counsel for both sides, the mutual release is permissible

in this case").

      In addition to mutuality and the absence of a continuing employment relationship, party

size is also salient.  This case is not a class action and so one of the dangers of an overly broad

release—that it would bind class members who had no power to negotiate the settlement—is absent here. *Weng v. TW Rest. Inc.*, 2016 WL 3566849 at \*5 (S.D.N.Y. June 22, 2016) (accepting a mutual general release because the agreement bound only nine plaintiffs and was not a class action).

The Court questioned the general release in the Original Agreement. That general release was non-mutual. Defense counsel explained that the objective of the release was to establish a definitive end to any relationship between Defendant and Plaintiff, as Plaintiff was no longer an employee of Defendants. Counsel further argued that the policy considerations at play in wage-and-hour cases—in which the Court must be wary of unequal bargaining power between employer and employee—are not present here. Although that explanation was not without force, the parties have now agreed to modify the agreement to make the general release mutual.

In this case, the reasoning of Judge Cott is applicable and the Court will approve the mutual general release. *See Souza*, 2015 WL 7271747, at \*5. The mutual general release permits the two parties, who have evident hostility towards one another, to walk away from the relationship. Just as it frees Defendants from fear that after settling this lawsuit they might face another claim (perhaps spurred by the generosity of the settlement), it also frees Plaintiff from fear that Defendants will retaliate against him for enforcing his rights (perhaps by bringing an unrelated claim). There is no concern that the employer here withheld the wages Plaintiff was due to extract a general release; Plaintiff was seeking an affirmative claim—not money that was improperly withheld from him, but damages and penalties for a wrong that was independently done to him. In that sense, his claim was not different from retaliation claims in Title VII lawsuits and others that frequently are settled with general releases. *See, e.g. Bryant v. Rego Enterprises, LLC*, 2016 WL 7477614, at \*3-6 (E.D.N.Y. Dec. 23, 2016) (enforcing a general

release in an employment discrimination action); *Lambertson v. Kerry Ingredients, Inc.*, 50 F. Supp. 2d 163, 164 (E.D.N.Y. 1999) (same).

Moreover, there is every reason to believe that the agreement was reached after arms-length bargaining.  Just like Defendants, Plaintiff was represented by experienced counsel with a single client.  The negotiations were supervised by a court-sanctioned mediator.  Dkt. No. 13 at 1.

> b.   *The Confidentiality and Non-Disparagement Clauses*

The Court now turns to the confidentiality and non-disparagement provisions.  These provisions are broad and non-mutual.  Under them, Plaintiff agrees "not to communicate the terms of this Agreement, the contents, and the discussions and circumstances that preceded this Agreement . . . to any other person or entity, with the exception of his spouse, attorney or financial advisor and mental health providers."  Settlement Agreement at 9.  Plaintiff further agrees:

> not to participate in any conversations or discussions or elaborations or explanations with anyone about this Agreement or its terms, unless required by law, and shall not in any way disclose any of the terms of this Agreement or characterize the settlement contained herein, for example by stating that the settlement is favorable or unfavorable or even by indicating that a settlement sum has been paid.

*Id.*

The courts have drawn distinctions between two separate aspects of confidentiality in FLSA cases.  First, the courts have rejected attempts by parties to file or keep a FLSA settlement under seal.  As an agreement that must be approved by the court, a FLSA settlement is presumptively a judicial record to which the public has a right of access.  *See Lugosch v. Pyramid Co.*, 435 F.3d 110, 119 (2d Cir. 2006) ("The presumption of public access extends to any judicial document, that is, any document 'relevant to the performance of the judicial function

and useful in the judicial process.'") (quotations omitted).  As noted, it also disserves the public

interest and the goals of FLSA for those documents to be kept secret.  *See Joo v. Kitchen Table,*

*Inc.*, 763 F. Supp. 2d 643, 645 (S.D.N.Y. 2011) (supporting public access to settlement

agreements in FLSA cases because of "the general public interest in the content of the

documents upon which a court's decision is based, including a determination of whether to

approve a settlement" and "the private-public character of employee rights under the FLSA,

whereby the public has an independent interest in assuring that employees wages are far and thus

do not endanger the national health and well-being") (quoting *Hens v. Clientlogic Operating*

*Corp.,*  2010 WL 4340919, at 2 (W.D.N.Y. Nov. 2, 2010)).  The Settlement Agreement does not

suffer from this flaw.  It will be filed publicly.  Anyone who knows to look for it and can access

PACER can see it.

      Second, however, as a general matter, in wage-and-hour cases, courts have not

"approve[d] any provisions in the Agreement that would bar plaintiffs from openly discussing

their experience litigating [a] wage-and-hour case."  *Nights of Cabiria*, 96 F. Supp. 3d at 178; *see*

*also Arango*, 2019 WL 117466, at *3 ("[C]ourts in this District have repeatedly held that, even

when a settlement is publicly filed, a provision that prohibits Plaintiff's right to discuss the

settlement is incompatible with the purposes of FLSA, namely, to ensure that workers are aware

of their rights."); *Cortes*, 2019 WL 6318430, at *2 (refusing to approve a confidentiality

provision that would prevent plaintiff from communicating the terms and existence of the

agreement while indicating that court would approve a limited confidentiality provision that

prohibited plaintiff solely from disclosing the amount received under the Agreement); *Heiloo*,

2019 WL 5485205, at *2 (refusing to approve settlement that prohibits plaintiff from discussing

the basis for the action with any current or former employee of the company); *Souza*, 2015 WL

7271747, at *4 ("It would be a very rare case, if any, where confidentiality terms in a settlement agreement would be appropriate in resolving a wage-and-hour lawsuit given the policy concerns underlying the FLSA."); *Galindo v. East County Louth Inc.,* 2017 WL 5195237, at *5 (S.D.N.Y. Nov. 9, 2017) (holding that while "not every non-disparagement clause in an FLSA settlement is objectionable, clauses that effectively bar plaintiffs from making any negative statements about the defendants cannot stand").

The reasoning is evident: if a defendant employer could insist on a broad confidentiality provision as the cost of settlement, that would "thwart[] Congress's intent to ensure widespread compliance with the statute . . . by silencing the employee who has vindicated a disputed FLSA right." *Camacho v. Ess-A-Bagel, Inc.*, 2015 WL 129723, at *2 (S.D.N.Y. Jan. 9, 2015) (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010)).  It is difficult for an employee who is paid an insufficient wage to have the fortitude to sue her employer.  Only an intrepid few may be willing to do so, even when the violation is widespread.  "Among the people who require the protection of the FLSA are workers who are poorly educated and non-English speaking.  Some of these workers may have an understandable aversion to courthouses and lawyers.  At the same time, such persons are especially vulnerable to workplace exploitation and have much to gain from the diffusion of information about their employment rights." *Ess-A-Bagel*, 2015 WL 129723, at *2.  An employer empowered by the courts to insist on broad confidentiality provision as the cost of a wage-and-hour settlement would have a potent tool to defeat the objectives of FLSA.  She could wield that as a weapon to pick off, perhaps seriatim, those with the courage and knowledge to sue, while continuing to underpay those left ignorant of their rights.  In the context of wage-and-hour claims, the concern about "copycat" lawsuits is not

considered to be valid.  Because wage-and-hour claims tend to be general and to affect more than one employee, the legislation encourages copycat lawsuits by all those with rights to vindicate.

The Court is not aware of any cases addressing the permissibility of a confidentiality clause in a case raising solely retaliation claims with no claim of wage-and-hour violations.  In this Court's view, this particular settlement resolving exclusively retaliation claims under FLSA does not raise the same concerns as a settlement raising wage-and-hour claims.  In the first instance, retaliation claims, unlike wage-and-hour claims, generally are not systemic.  They require proof that in the individual case (1) an employee participated in a protected activity known to the employer, (2) the employer acted to disadvantage the employee, and (3) there was "a causal connection between the protected activity and the adverse employment action." *Mullins*, 626 F.3d at 53 (citing *McDonnell,* 411 U.S. at 793; *Brock,* 839 F.2d at 876).  The case is not proved by showing that an employer has a general practice of underpaying workers or not paying them for a particular type of service.

Moreover, and perhaps more importantly, although there is always a public good in persons knowing their rights, there is no particular concern in retaliation cases, and specifically no concern in this case based on the facts pleaded in the Complaint, that preventing Plaintiff from describing to others the content of his settlement with Defendants will deprive others with claims against Defendants of the ability to have their rights vindicated.  Plaintiff's claim is particular to him.  He alleges that Defendants used his post-staff meeting smoke break, which he had taken for years without repercussion, as an excuse to terminate his employment because he participated in the Underlying Action.  There is no suggestion in the Complaint that the actions taken against him were taken against others.  There is no basis for the Court to believe from the facts alleged that others suffered the same plight or that, if Plaintiff is deprived of his ability to

discuss his settlement and what he was paid, others with current claims will be deprived of their rights and abilities to bring claims.

In these circumstances, the concern with copycat lawsuits is more acute and legitimate. As defense counsel explained, notwithstanding the significant weaknesses in Plaintiff's claim, Defendant was willing to pay a cost of litigation settlement to resolve this claim, but only if Plaintiff did not share the contents of the Settlement Agreement with others. If Plaintiff were to share the contents of that agreement with others, Defendants might as well litigate. The benefit to Defendants of preventing copycat lawsuits would be worth the cost. But that result would not be in anyone's interest—not in the interest of the employer and , but also not in the employee's, not in the court system's, and not in the interest of the public.

It is important to note that the objectives of *Ess-A-Bagel* are not undermined by the confidentiality provision in the settlement here. Plaintiff already was a member of a class in a wage-and-hour case against Defendants. The settlement in that case did not preclude Plaintiff, or any member of the class, from discussing the settlement or the class's claims. Plaintiff and class members could inform other workers of their rights under FLSA. The Settlement Agreement here too does not restrict Plaintiff's rights to discuss the wage-and-hour case. Defense counsel confirmed this understanding of the confidentiality provision at the May 29 hearing.

**B.      The Attorney's Fee**

A prevailing plaintiff is entitled to reasonable attorneys' fees and costs under the FLSA and NYLL. *Fisher*, 948 F.3d at 600. "Fee awards in wage and hour cases should 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" *Id.* at 603 (quoting *Sand v. Greenberg*, 2010 WL 69359 at *3 (S.D.N.Y. Jan 7, 2010)).

16

In his initial submission in support of the Settlement Agreement, counsel argued that the Court should approve the fee award because it represented one-third of the settlement amount and because there was no reason to believe that counsel benefitted at the expense of the Plaintiff. Dkt. No. 13 at 5; *see Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit.").  As noted, that submission was plainly insufficient.  The Second Circuit has established that courts cannot determine the reasonableness of attorney's fees in the context of FLSA settlement agreements without first evaluating "the time and labor expended by counsel." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  Under *Fisher* and well-developed case law in this District, "[t]he fee applicant must submit adequate documentation supporting the attorneys' fees and costs" and "[e]ven if helpful, the percentage of attorneys' fees cannot be the determinative factor in evaluating the reasonableness of the award [of fees]." *Fisher*, 948 F.3d at 600; *see Hernandez v. Tabak*, 2013 WL 1562803, at *1 (S.D.N.Y. Apr. 10, 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336) ("To aid a court in determining the reasonable of proposed attorney's fees, counsel must submit evidence providing a factual basis for the award.").  The *Fisher* court thus cited with approval to prior case law that applications for attorneys' fees "should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."  *Fisher*, 948 F.3d at 600 (quoting *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983)); *see Arango*, 2019 WL 117466, at *5 ("[A] proper fee request thus includes 'contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done'") (quoting *Nights of Cabiria*, 96 F. Supp.

3d at 181); *Heiloo*, 2019 WL 5485205 at *1 (requiring billing records, records of expenses, and documentation concerning counsel's skill, experience and reputation).

Counsel has since submitted contemporaneous time records to support his application for attorneys' fees pursuant to *Fisher*.  These records document the date, hours expended, and nature of work done, Dkt. No. 18, as well as biographical information regarding his practice, Dkt. No. 15, sufficient for the Court to recognize the reasonableness of the award of fees and costs. Counsel's fee is limited to one-third of the aggregate settlement consideration, a factor that is "helpful," but not "determinative."  *Fisher*, 948 F.3d at 603; *see* Dkt. No. 15.[1]  More importantly, the settlement fee corresponds closely to the total fees and costs of $3,000 billed in this case by Plaintiff's counsel at a rate of $125 per hour, which is what Plaintiff's counsel represented he is currently charging another client.  Dkt. No. 18.  The Court has reviewed the time records and is satisfied that the tasks performed by counsel were reasonable and appropriate for a matter of this nature, as were the hours billed for each task.  *See* Dkt. No. 18.

## CONCLUSION

---

[1] District courts in this Circuit typically approve fee requests between 30% and 33% of the settlement.  *See Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *2 (S.D.N.Y. March 10, 2014) ("In this Circuit, courts typically approve attorney's fees that range between 30 and 33 [percent]."); *Palacio v. E*TRADE Fin. Corp.*, 2012 WL 2384419, at *6 (S.D.N.Y. June 22, 2012) ("[T]he percentage of recovery method . . . is consistent with the 'trend in this Circuit.'") (quoting *McDaniel v. Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)); *see also Camacho v. Midtown Ctr & Auto Repair Inc.*, 2020 WL 1082466 (S.D.N.Y. Mar. 5, 2020); *Aguirre v. Torino Pizza, Inc.*, 2019 WL 126059 (S.D.N.Y. Jan. 8, 2019); *Guzman v. Joesons Auto Parts*, No. 11-cv-4543, 2013 WL 2898154, at *4 (E.D.N.Y. June 13, 2013) (collecting cases); *Silverstein v. AllianceBernstein L.P.*, 2013 WL 6726910, at *9 (S.D.N.Y. Dec. 20, 2013); *Beckman v. KeyBank,* 293 F.R.D. 467, 481 (S.D.N.Y. 2013); *Lara v. Air Sea Shipping & Moving Co.*, 2019 WL 6117588 (S.D.N.Y. Nov 18, 2019) (approving fee award that represented 33% of net settlement amount); *Martinez v. SJG Foods LLC*, 2017 WL 4676828 (S.D.N.Y. Oct. 16, 2017) (same); *Meza v. 317 Amsterdam Corp.*, 2015 WL 9161791 (S.D.N.Y. Dec. 14, 2015).

Accordingly, the Court APPROVES the settlement.  The case is DISMISSED WITH PREJUDICE, namely, to ensure public access to court records, make workers aware of their rights, and mitigate any unequal bargaining power between the employer and employee.  *See, e.g.*, *Nights of Cabiria*, 96 F. Supp. 3d at 177 (S.D.N.Y. 2015); *Heiloo*, 2019 WL 5485205, at *1. The Settlement Agreement's provisions are now akin to those of FLSA settlement agreements in this Court.

The Clerk of the Court is respectfully directed to close the case.

SO ORDERED.

Dated: July 17, 2020
        New York, New York        _____
                                            LEWIS J. LIMAN
                                       United States District Judge